## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVISION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 17-0816 TJK |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, U.S. Environmental Protection Agency ("EPA"), by its undersigned attorneys, respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in favor of defendant on the grounds that no genuine issue as to any material fact exists and defendant is entitled to judgment as a matter of law.   In support of this motion, the Court is respectfully referred to defendant's accompanying declarations, exhibits, the Statement of Material Facts As To Which There Is No Genuine Issue, and the Memorandum of Points and Authorities In Support of Defendant's Motion For Summary Judgment.   A proposed order is also attached.

Respectfully submitted,

JESSIE K. LIU,
D.C. Bar # 472845
U.S. Attorney for the
District of Columbia

DANIEL F. VAN HORN,
D.C. BAR # 924092
Chief, Civil Division

/s/ Marina Utgoff Braswell
MARINA UTGOFF BRASWELL,
D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) | |
| Plaintiff, | ) | Civil No. 17-0816 TJK |
| | ) | |
| v. | ) ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS**
**TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), defendant U.S. Environmental Protection Agency ("EPA")

submits this statement of material facts as to which there is no genuine issue:

1.     By letter dated February 28, 2017, plaintiff submitted to EPA a request under the

Freedom of Information Act ("FOIA"), seeking: "since February 17, 2017: all correspondence,

including but not limited to, all letters, emails, text messages, instant messages, voicemails, and

phone logs for any phones utilized by the new EPA Administrator Scott Pruitt ('Mr. Pruitt') from

any and all agency and EPA servers, cloud portals, secure websites, computers, tablets, smart

phones, etc., sent to or from Mr. Pruitt, with the exception of any records that are or will be

publicly available (e.g., through regulations.gov)."   Declaration of Elizabeth White ("White

Decl."), attached, Ex. A.

2.     By letter dated February 28, 2017, plaintiff submitted to EPA a second FOIA

request, seeking "[s]ince February 17, 2017: all calendars and/or schedules, including but not

limited to travel itineraries and meeting schedules, of the EPA Administrator Scott Pruitt ('Mr.

Pruitt')."   Declaration of Ryan Jackson ("Jackson Decl."), attached, Ex. A at 1.

3.      Pursuant to 40 C.F.R. § 2.103(a), EPA used February 28, 2017, as the cut-off date for the search for responsive records.   White Decl., ¶¶ 3-4, 13-15; <u>see</u> Jackson Decl., ¶ 5.

4.      EPA searched for phone logs, paper records, emails, instant messages, hard copy documents, including letter correspondence, and calendar entries.   White Decl., ¶¶ 16-33; Declaration of Ryan Jackson ("Jackson Decl."), ¶¶ 4-11.

5.      EPA determined that a search of the Administrator's work cell phone was not necessary because, to the best of his knowledge, Administrator Pruitt did not use such phone to text about agency business during February 17-28, 2017.   Jackson Decl., ¶ 16 .

6.      EPA does not have the ability to retrieve any voicemail messages from a secure web client like the Administrator.   White Decl., ¶ 24.

7.      EPA searched all locations reasonably likely to have responsive information. White Decl., ¶ 33; Jackson Decl., ¶¶ 4-5.

8.      Pursuant to Exemption 5 of the FOIA, EPA withheld predecisional, internal, deliberative information under the deliberative process privilege, the release of which would harm EPA's decisionmaking process by chilling the frank communication of opinions and recommendations among EPA staff that are necessary to ensure an effective, thorough process by which agency decisions are reached, and to prevent any confusion that could result regarding the basis of a final agency decision through the release of predecisional deliberative information. White Decl., ¶¶ 36-39.

9.      Pursuant to Exemption 6, EPA withheld information the release of which would cause a clearly unwarranted invasion of the personal privacy of EPA Administrator Pruitt and an individual with whom he met for non-work-related reasons.   Jackson Decl., ¶¶ 12 – 15.

4

Release of this information would not contribute to the public's understanding of government operations or activities.   Id.

10.     Pursuant to Exemption 7(A), EPA withheld law enforcement information pertaining to an ongoing law enforcement action under the Clean Water Act, which EPA is charged with enforcing, because release of this information could reasonably be expected to interfere with this ongoing proceeding.   White Decl., ¶ 40.

11.     All reasonably segregable information has been released to plaintiff.   White Decl., ¶ 41; Jackson Decl., ¶ 17.

12.     EPA has received five additional FOIA requests from plaintiff seeking the same information requested in plaintiff's February 28, 2017 FOIA request EPA-HQ-2017-004360, at issue here, that cover the period of March 1, 2017 – March 15, 2018.   White Decl., ¶ 42.

13.     EPA has received three additional FOIA requests from plaintiff seeking the same information requested in plaintiff's February 28, 2017 FOIA request EPA-HQ-2017-004359 at issue here.   White Decl., ¶ 44.

14.     EPA is currently searching for responsive records to the five requests referenced in paragraph 12.   White Decl., ¶ 43.

15.     EPA has completed and processed three additional requests for calendar records associated with Administrator Pruitt, and has produced to plaintiff calendar records dating from February 11, 2017, through January 2, 2018.   White Decl., ¶ 44.

Respectfully submitted,

JESSIE K. LIU,
D.C. Bar # 472845
U.S. Attorney for the

District of Columbia

DANIEL F. VAN HORN,
D.C. BAR # 924092
Chief, Civil Division

/s/ Marina Utgoff Braswell
MARINA UTGOFF BRASWELL,
D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 17-0816 TJK |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**PRELIMINARY STATEMENT**

Plaintiff filed this civil action against defendant U.S. Environmental Protection Agency ("EPA"), alleging that EPA violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in connection with a request for information made by plaintiff.   In particular, plaintiff requested: "[S]ince February 17, 2017: all correspondence, including but not limited to, all letters, emails, text messages, instant messages, voicemails, and phone logs for any phones utilized by the new EPA Administrator Scott Pruitt ('Mr. Pruitt') from any and all agency and EPA servers, cloud portals, secure websites, computers, tablets, smart phones, etc., sent to or from Mr. Pruitt, with the exception of any records that are or will be publicly available (e.g., through regulations.gov)."   Declaration of Elizabeth White ("White Decl."), attached, Ex. A.

By letter dated February 28, 2017, plaintiff submitted to EPA a second FOIA request, seeking "[s]ince February 17, 2017: all calendars and/or schedules, including but not limited to travel itineraries and meeting schedules, of the EPA Administrator Scott Pruitt ('Mr. Pruitt')." Declaration of Ryan Jackson ("Jackson Decl."), attached, Ex. A at 1.

EPA performed a reasonable search of all locations that were likely to contain information responsive to plaintiff's FOIA requests.   Pursuant to its regulation at 40 C.F.R. § 2.103(a), EPA applied a cut-off date for the search of February 28, 2017, which was the date plaintiff's FOIA requests were received by EPA.

Plaintiff's First Amended Complaint indicates that plaintiff intends to challenge EPA's date-of request cut-off date for the search performed.   Plaintiff's challenge, however, is now moot.   In light of plaintiff's subsequent requests for the same information at issue in the February 28, 2017 requests, EPA is searching for responsive records through at least March 15, 2018.   Plaintiff's First Amended Complaint seeks only a search through the date that EPA began its search efforts on the February 28, 2017 requests, and that date was August 23, 2017. Since EPA's current search efforts go well beyond that date, plaintiff's request for a further search is now moot.

Even if plaintiff's request is not moot, EPA's cut-off date should be upheld.   The FOIA is silent on this issue, and EPA's cut-off date is based on a duly promulgated regulation that advances legitimate agency needs to the benefit of requesters.   Plaintiff is presumed to know the existence of this regulation and failed to seek any departure from its application.

With respect to the responsive records located, the nonexempt information was released to plaintiff, which consisted of 397 responsive documents in full, 138 documents in-part (*i.e.* redacted); EPA withheld 24 responsive documents in full.   Thereafter, plaintiff was provided a <u>Vaughn</u> Index of the information withheld under FOIA exemptions.   The parties then conferred and narrowed the issues in dispute to four items – two documents withheld under Exemption 5[1],

---

[1] EPA has since determined that certain information in one document must also be withheld

one telephone number, and one calendar entry.   EPA subsequently released the telephone

number to plaintiff and additional information in the document withheld under Exemptions 5 and

7(A).   Thus, the dispute between the parties with respect to the application of FOIA exemptions

has been narrowed to two documents and one calendar entry.

As demonstrated below, judgment should be entered in favor of defendant based on the

entire record, including the declarations and the <u>Vaughn</u> information describing the withheld

information, because there is no genuine issue of material fact and defendant is entitled to

judgment as a matter of law.

### STANDARD OF REVIEW

Courts resolve nearly all FOIA actions on motions for summary judgment.   <u>See</u>, <u>e.g.</u>,

<u>Competitive Enterprise Institute</u> v. <u>United States Department of Treasury</u>, – F. Supp.3d –; 2018

WL 1587468, *2 (D.D.C. Apr. 2, 2018); <u>Keys</u> v. <u>Dep't of Homeland Sec.</u>, 570 F. Supp.2d 59, 66

(D.D.C. 2008).   To prevail in a FOIA case, a plaintiff must show that an agency has improperly

withheld reasonably described agency records.   <u>See</u>, <u>e.g.</u>, <u>Odland</u> v. <u>FERC</u>, 34 F. Supp.3d 3, 13

(D.D.C. 2014).   The government must demonstrate that its search for responsive records was

adequate, that any cited exemptions actually apply, and that any reasonably segregable non-

exempt information has been disclosed after redaction of exempt information.   <u>See id.</u>;

<u>American Civil Liberties Union</u> v. <u>U.S. Dep't of Def.</u>, 628 F.2d 612, 619 (D.C. Cir. 2011).

"The government may sustain its burden of establishing that requested records were

appropriately withheld through the submission of declarations detailing the reasons that a FOIA

exemption applies, along with an index, as necessary, describing the materials withheld."

--------------------------------------------------

pursuant to Exemption 7(A).

Public Citizen v. U.S. Dep't of Health & Human Serv., 66 F. Supp. 3d 196, 205 (D.D.C. 2014). As the Court of Appeals for this Circuit has made clear, "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."   Am. Civil Liberties Union, 628 F.3d at 619.

## ARGUMENT

### I.       Defendant EPA Performed an Adequate Search for Responsive Documents.

To prevail in a FOIA case, a requester must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'"   Department of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)); see 5 U.S.C. § 552(a)(4)(B).   The agency must establish that it has conducted a search reasonably calculated to uncover all responsive records.   See, e.g., Baker & Hostetler LLP v. Department of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006); Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325-26 (D.C. Cir. 1999); Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

Although the adequacy of the search is "dependent upon the circumstances of the case," Truitt, 897 F.2d at 542, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."   Oglesby v. Department of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). In this connection, it is axiomatic that the fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those

4

documents was <u>adequate</u>.'"   <u>Steinberg</u> v. <u>Department of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting* <u>Weisberg</u> v. <u>Department of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); <u>accord</u> <u>Nation Magazine</u> v. <u>Customs Service</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place.   <u>Kowalczyk</u> v. <u>Department of Justice</u>, 73 F.3d 386, 388 (D.C. Cir. 1996).   Nor does the FOIA require that an agency search every record system.   <u>Oglesby</u>, 920 F.2d at 68.

The "[f]ailure to turn up [a specified] document does not alone render [a] search inadequate."   <u>Nation Magazine</u>, 71 F.3d at 892, n.7.   Nor is the issue before the Court "whether there might be any further documents," <u>Kowalczyk</u>, 73 F.3d at 388; rather, it is whether the search was adequate.   <u>Weisberg</u>, 745 F.2d at 1485.   In order to prove that its search was reasonable, the agency is entitled to rely upon affidavits, provided that they are relatively detailed, nonconclusory, and submitted in good faith.   <u>Id</u>. at 1486.; <u>Perry</u> v. <u>Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982) ("affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA").   The affidavits must show "that the search method was reasonably calculated to uncover all relevant documents," and should "explain how the search was conducted."   <u>Oglesby</u>, 920 F.2d at 68.   The presumption of good faith ''cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"   <u>Mobley</u> v. <u>CIA</u>, 806 F.3d 568, 581 (D.C. Cir. 2015), (*quoting* <u>SafeCard Servs.</u>, 926 F.2d at 1200)); <u>DiBacco</u> v. <u>U.S. Army</u>, 795 F.3d 178, 191 (*quoting* <u>Wilbur</u> v. <u>CIA</u>, 355 F.3d, 675, 678 (D.C. Cir. 2004) (*per curiam*)).

A.      **EPA Performed an Adequate Search for Responsive Records**

      1.    **Searches for Phone Log, Voicemail, and Text Message Records**

As the White Declaration explains, on August 23, 2017, EPA began searching for records responsive to plaintiff's request.   Id. at ¶¶ 12 & 16.   EPA's Endpoint & Collaboration Solutions Division, within the Office of Information Technology Operations, in the Office of Environmental Information, is responsible for the configuration and maintenance of technologies used by EPA employees such as cell phones.   White Decl., ¶ 16.   Administrator Pruitt has one cell phone assigned to him by EPA.   See id.   The Division located the phone log records for Administrator Pruitt's cell phone for the relevant time period, which is February 17 – 28, 2017. Id.

Administrator Pruitt also has a phone on his desk with a direct line that he uses for work-related business.   White Decl., ¶ 18.   EPA initially pulled the phone logs for the main office line for the Office of the Administrator.   EPA staff subsequently determined that this was an incorrect number to search, because the Administrator does not personally make or receive phone calls using the main office line for the Office of the Administrator.   Id.   After the error was discovered, on November 29, 2017, the correct number for the Administrator's direct line was searched for responsive phone logs for the period of February 17 - 28, 2017.   Although initially no records were located that were responsive to plaintiff's request, EPA has since been able to retrieve the phone logs for February 17 – 28, 2017.   Id. at ¶¶ 19-20.   One entry existed during this time period, and it is being released to plaintiff with only a redaction for Administrator Pruitt's phone number, which plaintiff has stated it will not challenge.   Id. at

¶ 20.

EPA also reviewed paper materials that were provided by the Administrator's support staff responsible for answering the phones from February 17 - 28, 2017, and did not locate any responsive records.   White Decl., ¶ 21.

With respect to text messages, EPA did not search the Administrator's work cell phone for text messages, because, to the best of his knowledge, Administrator Pruitt did not use a work cell phone to send or receive text messages during February 17-28, 2017.   Jackson Decl., ¶ 16 .

With respect to voicemail messages, EPA's voicemail system for the Administrator does not include the capability to download and save a voicemail message using either a phone on the system or from the Messaging Web Access application.   White Decl., ¶ 24.   The Administrator uses a secure web system that "cannot capture and save a copy of a voice message to a file on a computer, send or forward voice messages to local or remote subscribers outside the Avaya Aura Messaging system, or send or forward voice message to email addresses."   Id.

## 2.   Search for Email & Instant Message Correspondence Records

On October 5, 2017, EPA's eDiscovery Service team began to search for email and instant message records from February 17 - 28, 2017, sent to or from Administrator Pruitt. White Decl., ¶ 26.   Excluded from this search, pursuant to an agreement by the parties, were certain issue mailers.   Id.   The search for other responsive information was carried out by EPA's eDiscovery Service team to locate any email messages, email attachments, or instant messages sent or received by any of identified Microsoft Outlook accounts, using either the Outlook email software or the EPA instant messaging tool, Skype for Business (previously named Skype or Lync).   Id.

7

EPA Policy requires EPA staff to forward any work-related records sent to or received by a personal messaging account, such as a personal email address, to their EPA email account within 20 days of sending or receiving such a message.   White Decl., ¶ 27.   Administrator Pruitt was specifically briefed on this requirement.   Id.   TAs explained in Ms. White's declaration, EPA conducted a search of the Administrator's EPA email accounts that would have located any email messages sent or received by any of those accounts in the relevant timeframe. Id.

On October 26, 2017, the EPA eDiscovery Services team completed collecting the responsive records and provided EPA Office of General Counsel ("OGC") attorneys access to a database containing the collected Microsoft Outlook records.   White Decl., ¶ 28.   The OGC attorneys then reviewed the collected records for responsiveness and for any applicable FOIA exemptions.   EPA did not find any responsive instant messages, or emails to or from Administrator Pruitt's personal email account, in the collected documents.   Id.

### 3.   Search for Hard Copy and Letter Correspondence Records

EPA also conducted a search for responsive records in the Correspondence Management System ("CMS"), which is EPA's correspondence tracking and workflow management application.   White Decl., ¶ 31.   Correspondence addressed to and from the Administrator are logged into this system, either by being scanned, if a hard copy, or imported from the email system from which the correspondence was generated.   Id.   Therefore, CMS is the system which is likely to contain all hard copy and letter correspondence records sent to or from the EPA Administrator during February 17 - 28, 2017.   Id.    All CMS pieces of correspondence from this time period were searched and processed for plaintiff.   Id.

4.   **Search for Calendar Entries**

Administrator Pruitt's calendar of meetings and appointments is maintained at EPA through the use of Microsoft's Outlook calendar application.   Declaration of Ryan Jackson ("Jackson Decl."), attached, ¶ 4.   EPA has a specific Outlook account designated for maintaining the Administrator's schedule.   Id.   This account is the location where the accurate and complete information regarding the Administrator's schedule is stored.   Id.   In response to plaintiff's request, the Administrator's Outlook account was searched and responsive records were retrieved and processed.   Id. at ¶¶ 5-11.

*                     *                     *

The foregoing demonstrates that EPA performed a reasonable search for records responsive to plaintiff's FOIA request, by searching all locations reasonably likely to have responsive information.

B.   **Plaintiff's Challenge to EPA's Regulation on the Cut-Off Date for the Search is Moot**

Plaintiff's First Amended Complaint raises a claim that EPA applied an improper cut-off date to the search for responsive records by using a cut-off date that was the date plaintiff's FOIA request was received by EPA.   First Amended Complaint at 1.   EPA used this date based upon its regulation found at 40 C.F.R. § 2.103(a).   White Decl., ¶ 13.

Under 40 C.F.R. §2.103(a):

§2.103 **Responsibility for responding to requests**.

(a) In general. Except as stated in paragraphs (c), (d), (e), and (f) of this section, the EPA office that has possession of that record is the office responsible for responding to you. In determining which records are within the scope of a request, an office will ordinarily include only those records in its possession as of the date

9

the request was received in the Headquarters or Regional FOI Office. If any other
date is used, the office will inform you of that date.

40 C.F.R. § 2.103(a).

Plaintiff will undoubtedly argue that this cut-off date has been rejected by the Court of

Appeals in Public Citizen v. Dep't of State, 276 F.3d 634, 642 (D.C. Cir. 2002).   In that case,

the Court of Appeals rejected application of a date-of-request cut-off policy to all FOIA requests,

regardless of circumstances, finding it to be unreasonable.   Id. at 642-43.   That case, however,

did not involve a regulation duly promulgated under the Administrative Procedure Act, nor did

the Court hold that the date-of-request could never be used.   Instead, the Court addressed a

policy of the Department of State and pointedly stated that "nothing in this opinion precludes the

Department or any other federal agency from attempting a more compelling justification for

imposing a date-of-request cut-off on a particular FOIA request."   Id. at 644.

Nonetheless, plaintiff's claim on this issue is now moot because EPA is processing

plaintiff's subsequent FOIA requests, which seek the same information, and go well beyond the

cut-off date of search in the instant case.   These subsequent requests cover the time period of

March 1, 2017, through March 15, 2018.   White Decl., ¶ 42.    EPA is currently searching for

responsive records, which will cover at least the period of March 1, 2017, through March 15,

2018.   Id. at ¶ 43.   This end date is well past August 23, 2017, which is the date that EPA

initiated its search on the requests at issue here, id. at ¶ 12, and the date that plaintiff claims EPA

should have used as a cut-off date for the search performed here.   See First Amended

Complaint, p. 17.

Thus, plaintiff can no longer argue that this Court should order EPA to search for

responsive records through August 23, 2017, because EPA is already performing such a search,

10

and more.   When "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," a case becomes moot, and the courts no longer have jurisdiction over the matter.   American Bar Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011) (citing Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quotation marks omitted)); see also Preiser v. Newkirk, 422 U.S. 395, 401 (1975).   The fact that this case may have presented a live controversy on the issue of EPA's cut-off date used in FOIA cases when the Complaint was filed, does not alter the present mootness status of the case.   For courts to have jurisdiction over a matter under Article III of the U.S. Constitution, "'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" Kingdomware Technologies, Inc. v. United States, 136 S. Ct. 1969, 1976 (2016) (quoting Already, LLC v. Nike, 133 S. Ct. 721, 726 (2013)); Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997); Preiser, 422 U.S. at 401.

Here, plaintiff can show no concrete injury nor is there any meaningful relief that this Court could order with respect to EPA's cut-off date for processing FOIA requests.   Plaintiff's claim undoubtedly will be that EPA should have searched for records through August 23, 2017, the date on which the agency began its search for responsive records in the instant case.   See Public Citizen, 276 F.3d at 642 (holding the date of search to be a reasonable cut-off date in a case involving no FOIA regulation establishing a cut-off date).   Although EPA did not use that date for the instant FOIA request, it has caused plaintiff no injury because EPA is now searching for the same type of records sought in the instant FOIA request through at least March 15, 2018, in response to follow-on requests made by plaintiff.

11

In light of this fact, there is no meaningful relief that this Court could order regarding EPA's search cut-off date.   Plaintiff cannot request this Court to order EPA to search through August 23, 2017, because EPA is already conducting such a search.   Consequently, any challenge plaintiff had to the application of EPA's cut-off date regulation is now moot.

### C.   EPA's Regulation on a Cut-Off Date for the Search Does Not Violate the FOIA

Even were this Court to conclude that plaintiff's challenge to EPA's FOIA regulation is not moot, despite the lack of current concrete injury to plaintiff, plaintiff cannot show that this regulation violates the FOIA or Circuit law.   The FOIA is silent on what date an agency should use as a cut-off date for the search parameters to be applied in responding to a FOIA request. See generally 5 U.S.C. § 552.   This Circuit in Public Citizen limited its holding to the Department of State's policy as applied to the facts of that case.   Id., 276 F.3d at 642-44.

Here, by contrast, EPA has set forth its cut-off policy in a regulation, put out for notice and comment on April 12, 2000, see 65 Fed. Reg. 71, at 19703 (Apr. 12, 2000), and finalized on November 5, 2002.   67 Fed. Reg. 214, at 67303 (Nov. 5, 2002).   The cut-off policy is not inflexible and expressly provides that a different cut-off date may be applied.

The White Declaration explains the purpose for this policy:

Based on 40 C.F.R. § 2.103(a), OEX staff normally search for records in the Agency's possession as of the date a request is received, although the regulation allows EPA to choose an alternate date when the circumstances warrant it.   Using the date of the request as a cut-off date for the search allows my staff to coordinate much more easily with other parts of the agency on multi-part, multi-office complex requests. Because EPA FOIA processing resources are distributed across agency offices, it would become unreasonably burdensome to track and communicate multiple search cut off dates for a single request internally.

Using multiple cut-off dates would also generate confusion for the requester as to the cut-off date used. Using the date of receipt (unless otherwise communicated) provides transparency and accountability for the processing of the request to both the requester and Agency staff. For example, my office routinely sees regular FOIA requesters who organize their requests based on the date of their last-submitted request on a topic. Plaintiff in this case has engaged in this practice as well.

The general practice of using a single, fixed, cut-off date for the requests enables my staff to focus their time more productively on locating and processing records that are of specified interest to the requester.  It also allows them to communicate internally with other offices having equities in a document by providing a specific time frame of a request rather than multiple time frames depending on which type of record was collected for a request.

White Decl., ¶¶ 13-15.  But see Center for Biological Diversity v. EPA, Civil No. 16-0175, at 21-22 (D.D.C. Sept. 28, 2017) (EPA should have used date of search as cut-off date but EPA's regulation not considered).

Given the fact that EPA's cut-off policy is publicly available in a regulation, plaintiff is charged with notice of its contents.  Cheek v. United States, 498 U.S. 192, 199-200 (1991) (traditional rule is person is presumed to know the law).  Yet plaintiff's FOIA request did not seek to have EPA apply a cut-off date for searching for responsive records that was different than the cut-off policy established in EPA's regulation.  See White Decl., Ex. A.  Plaintiff should not be heard to complain now that EPA's cut-off policy violates the FOIA, when EPA's regulation allows for the application of a cut-off date that is different than the date-of-request, and plaintiff's FOIA request failed to seek the application of a different cut-off date.

Nonetheless, this Court need not reach this issue, given the fact that EPA is currently performing the very same search that plaintiff requests in its First Amended Complaint.

13

## II.     Pursuant to Exemption 5, EPA Properly Withheld Information
##         Subject to the Deliberative Process Privilege.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."   5 U.S.C. § 552(b)(5).   The exemption protects records that ordinarily would be privileged in the civil discovery context, and thus encompasses the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine.   See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975); Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184-87 (D.C. Cir. 1987).   As explained below, EPA withheld certain information under Exemption 5's deliberative process privilege.   White Decl., ¶¶ 35-38.

To qualify for protection under the deliberative process privilege, a record must be "both predecisional and deliberative."   Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).   A document is pre-decisional if "it was generated before the adoption of an agency policy," and deliberative if "it reflects the give-and-take of the consultative process."   Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).   The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions."   NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150–51 (1975) ("Sears").   The privilege applies to documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."   Id. at 150; Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (deliberative process privilege protects documents "which would inaccurately reflect or prematurely disclose the views of the agency").   The privilege "'ensur[es] that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. . . . Such consultations are an integral part of its deliberative process; to conduct this process in public

14

view would inhibit frank discussion of policy matters and likely impair the quality of decisions.'"

McKinley, 647 F.3d at 339-40 (*quoting* Ryan v. Dep't of Justice, 617 F.2d 781, 789-90 (D.C. Cir.

1980)); Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997) (noting that the privilege "reflect[s] the

legislative judgment that the quality of administrative decision-making would be seriously undermined

if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal

or policy matters would be impossible").

The deliberative process privilege also protects factual materials that are closely

intertwined with opinions, recommendations, and deliberations.   Ancient Coin Collectors Guild

v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011) ("[T]he legitimacy of withholding

does not turn on whether the material is purely factual in nature or whether it is already in the

public domain, but rather on whether the selection or organization of facts is part of an agency's

deliberative process."); Mapother, 3 F.3d at 1538-39.   Whether a document is pre-decisional

does not depend on the agency's ability to identify a specific decision for which the document

was prepared.   Sears, 421 U.S. at 151 n.18.   Rather, the deliberative process privilege applies as

long as the document is generated as part of a continuing process of agency decision-making.

Here, EPA invoked Exemption 5 to protect one document in full, and portions of a

second document.   With respect to the document withheld in full, the document consists of a

two-page memorandum and four-page attachment, which was circulated solely within EPA.

White Decl., ¶ 37.   The two-page memorandum contains a draft analysis and a proposed

recommendation concerning a rule in development entitled: "Further Delay of Effective Date for

Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air

Act, Section 112(r)(7)" rule.   The four-page attachment to the memorandum contains the draft

text of the final rule that was proposed for signature.   Id.   The predecisional document provides internal advice and recommendations to the Administrator regarding this proposed EPA rule and does not represent the final decision of the agency.   Id.   In fact, the two-page memorandum and its attachment were revised further before being presented to final decisionmakers, and the documents withheld differ substantially from the final text of the final rule that was published in the Federal Register.   Id.

Release of this internal memorandum and draft text of a rule, which was not adopted as presented in this document, would chill those involved in the deliberative process from offering candid opinions and recommendations on action EPA is considering.   White Decl., ¶ 37. Additionally, release of this information would cause public confusion over the actual bases for the agency's published rule.   Id.   "Any factual information contained in the document was selectively chosen as part of the deliberative process and is inextricably intertwined with the draft recommendation or draft text, both of which were edited substantially."   Id.   For these reasons, this predecisional document was properly withheld pursuant to Exemption 5.

EPA also withheld portions of another document consisting of a weekly report emailed to the Administrator and other senior leaders from the Acting Regional Administrator for EPA Region 4.   White Decl., ¶ 38.   These types of reports contain short updates from regional staff on multiple topics selected for the Administrator's attention and are used by EPA's senior leaders to keep the Administrator timely apprised of a vast number of time-sensitive, in-progress issues and decisions across the agency.   Id.   These documents are not shared outside of EPA. Id.

16

A portion of this document relating to an ongoing Clean Water Act enforcement action was redacted to protect internal staff analyses, opinions, advice, and recommendations regarding how to proceed with this specific enforcement action.   White Decl., ¶ 39.   The withheld information was prepared to assist EPA leadership in reaching a final decision on how to proceed with the enforcement action and presented options for consideration.   The withheld information does not represent any final decision by EPA in connection with this enforcement action.   Id. Release of this information would harm EPA's decisionmaking process by creating a chilling effect on EPA's ability to have open and frank deliberations among its staff in connection with important enforcement actions in which EPA is involved.   Id.   Furthermore, release of this predecisional information would cause public confusion by disclosing preliminary opinions and recommendations that do not reflect the ultimate position of EPA or the U.S. Government with respect to the enforcement options under consideration.   Id.   For these reasons, portions of this predecisional document was properly withheld pursuant to Exemption 5.[2]

### III.   Pursuant to Exemption 6, EPA Properly Withheld Information to Protect Personal Privacy of Individuals Whose Names Appear in the Records.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual."   U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982); Lepelletier v. Fed. Deposit Ins. Corp., 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted

---

[2] Exemption 7(A) was also asserted with respect to the information withheld.   See, infra, at 19-21.

17

the phrase 'similar files' to include all information that applies to a particular individual."); <u>Govt. Accountability Project</u> v. <u>U.S. Dep't of State</u>, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).   In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."   <u>Lepelletier</u>, 164 F.3d at 46; <u>Chang</u> v. <u>Dep't of Navy</u>, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).   "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"   <u>Lepelletier</u>, 164 F.3d at 47 (*quoting* <u>U.S. Dep't of Def.</u> v. <u>Fed. Labor Relations Auth.</u>, 510 U.S. 487, 497 (1994)) (alterations in original); <u>Beck</u> v. <u>Dep't of Justice</u>, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (*quoting* <u>Dep't of Justice</u> v. <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749, 773 (1989)).   "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."   <u>Beck</u>, 997 F.2d at 1492.

In this case, plaintiff challenges only the withholding of one entry on Administrator Pruitt's calendar, which consists of "a personal meeting occurring after 5:30 PM and before 7:00 PM on Friday, February 24, 2017."   Jackson Decl., ¶ 12.   As Mr. Jackson explains: "The entry is designated "unofficial" on the calendar, and is for a 30-minute period between the time of 5:30 PM and 7:00 PM on February 24, 2017."   <u>Id</u>. at ¶ 13.   The entry relates to a meeting which was personal in nature, during which, according to the Administrator, no work-related matters were discussed.   <u>Id</u>. at ¶ 14.

Mr. Jackson further states that:

18

This entry reflects a personal meeting or event which relates to personal matters of the Administrator. The Administrator has a significant privacy interest in protecting information regarding his limited personal time and time spent attending to personal matters. Additionally, the individual who appears in the Administrator's calendar also has his or her own substantial privacy interests in avoiding public scrutiny of interactions of a personal nature or in avoiding unwanted contact or harassment due to his or her relationship with the Administrator. There is no public interest in information showing that the Administrator had a personal meeting. Release of this information would shed no light on government activities or operations.

Jackson Decl., ¶ 15.

Thus, EPA applied Exemption 6 to information concerning a third party because the name of this person, and the Administrator's meeting with this person, sheds no light on what the government is doing.   Additionally, both this person and the Administrator have a significant privacy interest in being able to have a private meeting without public disclosure that could bring unwarranted attention to such a private event.   And even if these privacy interests are deemed to be less than substantial, some privacy interests trumps no public interest every time.   U.S. Dep't of Defense v. FLRA, 510 U.S. 487, 500 (1994) (a very slight privacy interest can outweigh the public interest under the FOIA).

Accordingly, the Court should uphold the application of Exemption 6 to this limited withheld information.

**IV.     Pursuant to Exemption 7(A), EPA Properly Withheld Information the Release of Which Could Reasonably be Expected to Interfere With Enforcement Proceedings.**

To invoke Exemption 7(A), an agency must demonstrate as a threshold matter that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b).   To satisfy this requirement, it must show that the records at issue are related to the enforcement of federal laws and that the law enforcement activity was within the law enforcement duty of an agency.   See

Tax Analysts v. IRS, 294 F.3d 71, 78 (D.C. Cir. 2002) (*citing* Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982)).   It cannot be reasonably disputed that EPA is charged with enforcing environmental laws such as the Clean Water Act.   White Decl.,¶ 40.

The record here establishes that the information for which Exemption 7(A) was invoked constitutes information "compiled for law enforcement purposes."   The White Declaration makes clear that enforcement proceedings are ongoing.   Id. at ¶ 40.   This declaration, therefore, establishes that the responsive information at issue meets the threshold requirement of Exemption 7.

Because this information qualifies as Exemption 7 information, the next consideration is whether it is protected from release by Exemption 7(A).   Exemption 7(A) exempts from mandatory disclosure law enforcement records or information to the extent their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).   This determination necessitates a two-step analysis focusing on: (1) whether a law enforcement proceeding is pending or prospective, and (2) whether release of the information about it could reasonably be expected to cause some identifiable harm to it.   See e.g., Boyd v. Department of Justice, 475 F.3d 381, 385-86 (D.C. Cir. 2007); North v. Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989).   But the foremost consideration remains "to prevent harm [to] the Government's case in court." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224-25 (1978).

Ms. White explains that the information withheld here under Exemption 7(A) involves an ongoing enforcement proceeding for enforcing the Clean Water Act related to a consent decree with the Kentucky Sanitation District #1 obtained under this statute. The withheld information

consists of EPA enforcement staff's evaluation of a request by the Kentucky Sanitation District

#1 to extend a deadline in an existing consent decree.   Ms. White states that:

> Release of sensitive internal EPA deliberations and input from multiple EPA
> offices concerning the extension request would harm EPA's ability to manage
> coordination with the State of Kentucky over the enforcement matter.   Release of
> the analysis and information about what EPA is considering when evaluating this
> request would harm EPA's enforcement abilities by interfering with EPA's
> negotiation position with this third party on the terms of the consent decree, and
> could negatively affect EPA's desired enforcement outcome in the matter.

White Decl., ¶ 40.

The foregoing demonstrates that EPA has properly withheld information under

Exemption 7(A) the release of which could reasonably be expected to interfere with enforcement

proceedings.

### V.   EPA Has Complied with FOIA's Segregability Requirement.

Under the FOIA, if a record contains information exempt from disclosure, any

"reasonably segregable," non-exempt information must be disclosed after redaction of the

exempt information.   5 U.S.C. § 552(b).   Non-exempt portions of records need not be disclosed

if they are "inextricably intertwined with exempt portions."   Mead Data Cent., Inc. v. Dep't of

the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).   To establish that all reasonably segregable,

non-exempt information has been disclosed, an agency need only show "with 'reasonable

specificity'" that the information it has withheld cannot be further segregated.   Armstrong v.

Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996); Canning v. Dep't of

Justice, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).   Here, EPA has carefully reviewed the

material withheld and determined that no additional non-exempt information could be released.

21

All of the information withheld is protected by one or more FOIA exemptions.   White Decl., ¶ 37; Jackson Decl., ¶ 17.

## **CONCLUSION**

Accordingly, for all of the reasons set forth above and in the accompanying declarations, defendant respectfully submits that this motion for summary judgment should be granted.


Respectfully submitted,

JESSIE K. LIU,
D.C. Bar # 472845
U.S. Attorney for the
District of Columbia

DANIEL F. VAN HORN,
D.C. BAR # 924092
Chief, Civil Division

/s/ Marina Utgoff Braswell
MARINA UTGOFF BRASWELL,
D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVISIONSITY, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 17-0816 TJK |
| v. | ) ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| Defendant. | ) ) | |

**<u>ORDER</u>**

Upon consideration of defendant's motion for summary judgment, plaintiff's opposition, and the entire record in this case, the Court finds that there are no issues of material fact and the defendant is entitled to judgment as a matter of law.   Therefore, it is hereby

ORDERED that defendant's motion for summary judgment is granted.

This is a final, appealable order.

_____
UNITED STATES DISTRICT JUDGE